**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LATIFFINE GADSON                  :
                  *Plaintiff,*        :
                                  :
        v.                        :   **CIVIL NO. 24-6382**
                                  :
CONSTELLIS, INC.                  :
                  *Defendant.*        :
                                  :

**MEMORANDUM**

Scott, J.                                                     **May 4, 2026**

Pending before the Court is Defendant's Motion to Enforce Settlement and Dismiss Case. ("Motion") (ECF No. 35). This Court held a hearing on the Motion on March 24 and 25, 2026, during which the Parties presented evidence and after which Defendant submitted a Supplement Brief in Further Support of its Motion. (ECF No. 51.) For the reasons discussed herein, the Court **DENIES** Defendant's Motion.

**I.      Background**

This matter comes before the Court by way of the underlying employment law case brought by the Plaintiff Latiffine Gadson against her former employer Defendant Constellis, Inc., which does business under the name Triple Canopy, Inc. In its Motion, Defendant contends that the underlying "action was resolved on November 17, 2025, when counsel for Plaintiff Latiffine Gadson and Defendant reached a binding settlement agreement on all material terms." (Motion at 2.) Plaintiff's counsel had been negotiating with Defendant's counsel to settle Ms. Gadson's case when counsel reached an agreement whereby Defendant would pay Ms. Gadson $20,000 and Ms. Gadson would continue to work for the company through December 27, 2025, to preserve her benefits, at which point she would resign.[1]  *Id.* at 3.  Ms. Gadson's attorneys confirmed the

---

[1] The Parties also negotiated terms pertaining to Ms. Gadson's W-2 and 1099 compensation.

1

settlement agreement with Defense counsel that same day, after which Defense counsel cancelled an upcoming deposition of Ms. Gadson. *Id.* at 3-4.

Ms. Gadson, however, disputes that her counsel had authority to accept this settlement on her behalf. (Mar. 25, 2026, Hearing Tr. 55:21-25) ("I didn't give him authority, nor did I have reason to expect him to have such authority.") Her counsel, on the other hand, contend that they did have "authority to bind Plaintiff to the settlement" from multiple phone calls on November 17, 2025, during which it was counsel's understanding that "she was accepting the settlement even without the finalized dates and times" that were to be determined. (Motion at 7; Mar. 24, 2026, Hearing Tr. 42:9-43:1.) Ms. Gadson's counsel sent her an email on November 17 explaining the terms of the purported settlement agreement. On November 18, Ms. Gadson responded to this email in which she repudiated her acceptance of the agreement by indicating that her attorneys did not have the authority to settle. (Mr. 2, 2026, Hearing Tr. 43:14-23.)[2]

## II.   Legal Standard

"When evaluating a motion to enforce settlement, courts use 'the same standard as a motion for summary judgment: the non-movant's assertions must be treated as true; the non-movant must be given the benefit of the doubt when their assertions conflict with the movant's assertions; and the movant must be entitled to enforcement as a matter of law.'" *Williams v. Havens*, No. 4:21-CV-00015, 2023 U.S. Dist. LEXIS 215514, at *2 (M.D. Pa. Dec. 4, 2023) (citing *Hanko v. Aspen Dental Assocs. of NEPA, PLLC*, No. 3:18-1322, 2020 U.S. Dist. LEXIS 204708, at *2-3 (M.D. Pa. Nov. 3, 2020) (quoting *Dugan v. O'Hara*, 125 F. Supp. 3d 527, 535 (E.D. Pa.

---

[2] After Ms. Gadson's attorneys say the settlement was reached, they filed a Motion for Leave to Withdraw as Counsel because the lawyer-client relationship had been "irreconcilably harmed by Plaintiff [. . . and] deteriorated to the point that [Ms. Gadson's attorney] and his staff [could] no longer represent Plaintiff in this matter." (ECF No. 34 at 2; *see also* Hearing Tr. 46:20-47:19 ("We believed at that point that the attorney-client relationship had broken down. Based on our legal advice to Ms. Gadson, we believed also that it would be a financial hardship to the point where we could no longer continue to represent her on a contingency fee basis."))

2015)).  Thus, "the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement." *Dugan*, 125 F. Supp at 535.  The movant bears the burden of establishing the "absence of a genuine dispute of material fact." *Dicuio v. Brother Int'l Corp.*, 653 F. App'x 109, 112 (3d. Cir. 2016) (describing summary judgment standard) (citing *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015)).  The movant may only discharge this burden by showing an absence of evidence to support the non-movant's case. *Id.* (citing *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004).  The non-movant must therefore provide evidence "for any assertions on which it wishes to rely in opposing a motion to enforce settlement." *Williams*, 2023 U.S. Dist. LEXIS 215514, at *2.

When an attorney's authority to settle a case is in dispute, a court may find express authority "where the client delayed in asserting the lack of authority, or where it is clear that the real motive for challenging a settlement involved a change of heart." *Transport Int'l Pool, Inc. v. Alternative Transp., Inc.*, No. 07-2895, 2008 U.S. Dist. LEXIS 48756, 2008 WL 2550598, at *5 (E.D. Pa. June 25, 2008) (citing *Farris v. JC Penney Co., Inc.*, 176 F.3d 706, 713 (3d Cir. 1999)). Thus, a client may ratify their attorney's actions when she learns a settlement has been reached but does not promptly repudiate the attorney's authority to settle. *Dugan*, 125 F. Supp at 537 (citing *Transport Int'l Pool, Inc.*, 2008 U.S. Dist. LEXIS 48756, 2008 WL 2550598, at *5 (E.D. Pa. June 25, 2008); *Yarnall v. Yorkshire Worsted Mills*, 370 Pa. 93, 96 (Pa. 1952) ("A client ratifies [her] attorney's act if [s]he does not repudiate it promptly upon receiving knowledge that the attorney has exceeded his authority")).  Conversely, if the client does promptly repudiate the attorney's actions "the first moment [s]he receives knowledge that [her] attorney has transcended his authority[,]" that cuts against a finding of express authority. *Yarnall*, 370 Pa. at 96.

3

### III.   Discussion

#### a.   Defendant has not established that Ms. Gadson gave her counsel authority to bind her to the settlement agreement.

As a threshold matter, Defendant bears the burden of showing there is no genuine dispute of material fact to succeed.  Defendant can show such by establishing that Ms. Gadson agrees with its proposition that her attorneys had authority to bind her to the settlement agreement or by establishing that she lacks any evidentiary support for insisting otherwise.  The Court denies Defendant's Motion because it has not established either.

First, it is genuinely disputed whether her attorneys had the authority they claim to have had to enter into the agreement on her behalf.  Ms. Gadson was represented by Jordan Santo and David Koller of Koller Law P.C.  Mr. Santo testified that, over the course of several calls, it was his "understanding [. . . ] that, based on my advice to her, she was accepting the settlement." (Mar. 24, 2026, Hearing Tr. 42:9-43:1.)  But as was established during Mr. Koller's cross examination, he could not point to any evidence other than the phone call to demonstrate "[a]nything that would even vaguely support" Ms. Gadson accepting the settlement.  *Id.* at 114:14-21.  Nor was he able to identify specific contents of the phone call that would demonstrate why he believed Ms. Gadson was accepting the settlement; he only offered his conclusory assessment of the call.  In addition, and as Mr. Koller and Ms. Gadson both testified, Ms. Gadson was "always insistent that [she] [. . . ] didn't want to resign." *Id.* at 115:7-8; *Id.* at 20:20-23 ("No, I had no interest in resignating [sic]."").  But it is central to Defendant's Motion and position at the hearing that Ms. Gadson did indeed agree to resign pursuant to the settlement agreement.  Thus, Defendant has not only failed to show the absence of such a dispute, but its own witness also demonstrated the existence of such.

Second, central to Defendant's Motion is that Ms. Gadson did not sufficiently repudiate

4

what otherwise would be a valid settlement agreement. (Motion at 8; Mar. 24, 2026, Hearing Tr. 130:2-7 (Defendant's counsel testifying that there was no "indication whatsoever from Plaintiff or her attorneys that she was considering or had decided to repudiate the settlement" between when the agreement was purportedly finalized and when he later spoke to Mr. Santo.)). This is also genuinely disputed. As Mr. Santo testified, Ms. Gadson did in fact repudiate her purported acceptance of the agreement the day after it was alleged to be finalized. (Mar. 24, 2026, Hearing Tr. 43:14-23.) Ms. Gadson also testified that she did repudiate the agreement verbally and in writing, immediately after seeing the email about it. *Id.* at 22:5-24:18 ("I profusely declined."). *Cf. Yarnall*, 370 Pa. at 96 (finding no repudiation where client waited 20 months to disavow the attorney's authority). It is evident that Defendant does not agree that Ms. Gadson's response constituted sufficient repudiation even though one of its own witnesses inadvertently alluded to its sufficiency in addition to Ms. Gadson demonstrating its sufficiency. That is a genuine dispute of material fact.

Defendant, in its supplemental briefing, contends that the Third Circuit's ruling in *Polzer v. Allegheny County*, 599 F. App'x 425 (3d Cir. 2015) instructs this Court to presume that Ms. Gadson's attorneys had authority to enter into the agreement. (ECF No. 51 at 3-5.) In *Polzer*, the attorney in question testified that his client specifically said "okay" to his attorney informing him that he would accept a settlement if it was over a certain amount. *Id.* at 426. The court there found that was enough to constitute express authorization because the client "offer[ed] nothing" to support his position that he did not give such authorization. *Id.* at 427. But the record here does not favor Defendant in this regard; indeed, it is replete with genuine disputes of material facts on this exact point.

As discussed above, and contrary to Defendant's assertions, it not clear that Ms. Gadson

5

authorized the attorneys to bind her in an agreement.  Ms. Gadson giving Koller Law "authority to 'communicate' and to 'have conversations with opposing counsel' about settlement[,]" as Defendant points out, does not indicate authority to enter into an agreement.  (ECF No. 51 at 4.) Permitting an attorney to negotiate on one's behalf is fundamentally and necessarily distinct from permitting that attorney to commit one to a legally binding contract.  Further, Mr. Koller's testimony that Ms. Gadson gave such authority to Mr. Santo is rebutted by testimony from Defendant's witnesses that there is no evidence of what Ms. Gadson specifically said to give her attorneys any indication that she was accepting the agreement, that there is no further documentation or proof concerning Ms. Gadon's purported authorization, that Ms. Gadson had long insisted against resignation, and that Ms. Gadson did repudiate the agreement the day after receiving the email.

Defendant insists that Ms. Gadson's position here is merely buyer's remorse, but the record does not support such.  (ECF No. 51 at 6-7.)  Taking Ms. Gadson's assertions as true, this Court finds that they are more than speculative, "unsupported assertion[s]" that normally do not create a genuine dispute of material fact; they are supported by the testimony of Defendant's own witnesses, a reality that is fatal to Defendant's position here.  *Dicuio*, 653 F. App'x 109 at 113 (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) ("[A]n inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment.").

### b. Defendant has not established enforcement is warranted on promissory estoppel grounds.

Defendant also raises a promissory estoppel claim to persuade the Court to enforce the settlement.  "Even where no enforceable settlement contract exists, Pennsylvania law recognizes promissory estoppel as an equitable basis to enforce settlement promises when

reliance and injustice are shown." *Souderton Area for All v. Souderton Area Sch. Dist.*, No. 24-6202, 2026 U.S. Dist. LEXIS 21224, at \*31 (Feb. 2, 2026) (citing *Crouse v. Cyclops Indus.*, 560 Pa. 394, 745 A.2d 606, 610 (Pa. 2000)). A promissory estoppel clam requires the claimant to establish that "1) the promisor made a promise that [s]he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; *and* 3) injustice can be avoided only by enforcing the promise." *Id.* (emphasis added). The elements are conjunctive and must each be satisfied to support a finding of promissory estoppel. This remedy is rooted in courts' equitable powers. The third element—whether injustice can be avoided only by enforcing the promise—is "fact intensive" and dependent on the "reasonableness and substantiality of the reliance." *Id.*, at \*32 (citing *I.K. ex rel. B.K. v. Sch. Dist. of Haverford Twp.*, 961 F. Supp. 2d 674, 694 (E.D. Pa. 2013), *aff'd* 567 F. App'x 135 (3d Cir. 2014)).

For the reasons stated below and in the preceding section, the Court finds that Defendant has failed to establish a promissory estoppel claim. To start, Defendant has not satisfied the first prong of the inquiry. That is, Defendant has not established that Ms. Gadson made a promise that she should have reasonably expected to induce Defendant to act or induce forbearance on Defendant's part. First, Ms. Gadson did not herself directly make any promise, as she contends and as Defendant fails to prove otherwise. The key question here then becomes whether her attorneys made any such promise on her behalf. As previously discussed, the record does not substantiate Defendant's position that Ms. Gadson gave her attorneys such authority; the testimony at the hearing—including testimony from Defendant's own witnesses—and the lack of other evidence undermines that position. While it appears clear that Ms. Gadson gave her attorneys authority to negotiate on her behalf, no such clarity exists for the proposition that they

could bind her once a putative agreement had been reached. *Cf. Souderton*, 2026 U.S. Dist. LEXIS 21224, at *32-33 (" Plaintiffs were aware the Board was taking action on its promises, with the understanding that Plaintiffs would sign the settlement agreement. Plaintiffs did not waiver from their initial promises until after the District had performed its obligations, and in fact, agreed that the District had taken action consistent with the settlement agreement as they understood it. And Plaintiffs did not object to the District's continued performance of its obligations, except to request certain changes be made to ensure the protest area was made accessible to people with disabilities. [. . .] Plaintiffs continued to represent they intended to settle the case until the beginning of May 2025."). Thus the inquiry is whether "the promisor's 'words and deeds' objectively communicated an assurance on which reliance was foreseeable." *Id.* at 33 (citing *I.K.*, 961 F. Supp. 2d at 696, 700; *Crouse*, 745 A.2d at 610). In *Souderton*, the Plaintiff's representations "went beyond preliminary negotiation and reasonably conveyed that the matter had been resolved in substance, such that the District should proceed with implementation." *Id.* at 33-34. Here, Defendant has not established that Plaintiff made any such representations. Thus, Defendant fails on the first prong.

Defendant's showing on the second prong is slightly stronger. To be sure, Defendant only raised the promissory estoppel claim in a convoluted and brief manner in its supplemental response submitted after the Court's hearing on the Motion. (*See* ECF No. 51 at 7) ("Defendant Relied on the Settlement to Its Substantial Detriment. [. . .] This reliance mirrors the facts in *Dugan*, where the employer forewent its right to contest the plaintiff's unemployment claim in reliance on the settlement, and the Court enforced the agreement on both contract and promissory estoppel grounds."). This second prong is the only prong that Defendant directly

8

argued regarding promissory estoppel.[3]  Defendant argues that its "detrimental reliance further supports enforcement" because "Defendant: (1) canceled Plaintiff's continued deposition scheduled for November 18, 2025; (2) immediately notified its client; (3) began drafting a formal settlement agreement on November 18; (4) continued to employ Plaintiff through December 27, 2025, at its client's expense, to protect Plaintiff's benefits; and (5) held in abeyance its client's consideration of terminating Plaintiff's employment based on information revealed during her deposition." (ECF No. 51 at 7) (citations omitted).  To be clear, Defendant need not have detrimentally relied on the promise in multiple ways for this prong to be satisfied.  But because the first prong is not satisfied—and Defendant must establish each prong to succeed—there is no showing Defendant could make under the second prong to remedy that shortcoming.

Lastly, the Court addresses the final prong briefly.  Here, Defendant must also show that injustice can only be avoided by enforcing the settlement agreement.  But even if Defendant succeeded on the first two prongs, it does not establish the last prong and thus would ultimately fail.  Defendant provides only a conclusory statement that "[a]llowing Plaintiff to repudiate the settlement now would cause manifest injustice." *Id.*  But this is insufficient.  The Pennsylvania Supreme Court has observed that assessing this prong is inherently fact-intensive:

> satisfaction of [this] requirement may depend on the reasonableness of the promisee's reliance, on its definite and substantial character in relation to the remedy sought, on the formality with which the promise is made, on the extent to which the evidentiary, cautionary, deterrent and channeling functions of form are met by the commercial setting or otherwise, and on the extent to which such other policies as the enforcement of bargains and the prevention of unjust enrichment are relevant.

*Thatcher's Drug Store of W. Goshen, Inc. v. Consolidated Supermarkets, Inc.*, 535 Pa. 469, 477 (Pa. 1994) (alterations in original) (quoting Restatement (Second) Contracts § 90, comment b).

---

[3] The Court construed the other arguments Defendant raised as also being raised in support of its promissory estoppel claim—namely that Ms. Gadson did indeed make a promise on which Defendant reasonably and substantially relied—although Defendant did not directly brief this.  Still, even construing the arguments in this manner, Defendant does not provide enough factual support to meet its burden of establishing promissory estoppel.

Defendant asserts no facts to support the existence of injustice absent enforcement of the settlement agreement, providing nothing for the Court to assess. Moreover, to the degree that it is proper for the Court to construe Defendant's other arguments as supporting its promissory estoppel claim, the facts are insufficient to satisfy any of the prongs. The governing law here is clear—"[a] party asserting a claim of [promissory] estoppel has the burden of establishing all the essential elements." *Id.* (citing *Funds for Business Growth, Inc. v. Maraldo*, 443 Pa. 281, 288 (1971)). Estoppel "may be invoked only in those cases where all the elements of a true estoppel are present, for if it is loosely applied any promise, regardless of the complete absence of consideration, would be enforceable." *I.K.*, 961 F.Supp at 694 (citing *Stelmack v. Glen Alden Coal Co.*, 339 Pa. 410, (Pa. 1940)).

## IV.   CONCLUSION

Defendant had the burden to show that there were no genuine disputes of fact regarding the existence of a valid contract between Ms. Gadson and Defendant. It failed to do so. In the alternative, where its contract claim failed, Defendant had the burden of establishing all of the elements of a promissory estoppel claim to persuade the Court to bind Ms. Gadson. Here, too, Defendant failed to meet its burden. The Court finds that the record is insufficient to establish, as Defendant contends, that either a contract was formed between Ms. Gadson and the Defendant or that Ms. Gadson must be estopped from avoiding a promise she made to Defendant that Defendant reasonably relied on to its detriment.

Finding no viable contract claim or promissory estoppel claim, the Court **DENIES** Defendant's Motion to Enforce Settlement and Dismiss Case.

BY THE COURT:

_____
HON. KAI N. SCOTT
United States District Court Judge